### John B. Mallers v. McKenzie Furnace Company.

#### Gen. No. 13,210.

CONTRACT—*what does not justify rejection of machinery.* Where a contract does not provide that the efficiency of machinery shall be tested and determined by a single test but does provide that the final payment shall be made when such machines are "completed, tested and accepted, considering that thirty days after completion to be a satisfactory time for the acceptance of the above machines," it does not entitle a rejection upon a single test, even though unsatisfactory in results, where such test is made within five days after the completion of the machinery.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Affirmed. Opinion filed July 9, 1907.

**Statement by the Court.** This is an appeal by the defendant from a judgment for $2,795 recovered against him by the plaintiff in an action of assumpsit brought to recover the contract price of two mechanical stokers furnished by plaintiff to defendant under a written contract between the parties made September 11, 1902. Defendant had, before this contract was made, contracted with the Erie City Boiler Works to place in his building two of their water tube boilers with a capacity of 240 horse power each. The contract between plaintiff and defendant consists of two documents bearing the same date, each signed by the parties. By the first the plaintiff agreed to make, build and furnish to defendant two McKenzie Traveling Grate Stokers at the price of $1,200 each. The second contained the following provisions, among others:

"The following is a memorandum and a specification which is a part of this contract No. 2040 for two McKenzie Travelling Grate Stokers to be erected under your two Erie City water tube boilers, 250 H. P. each on the basis of ten sq. ft. of heating surface to a horse

power and 2490 sq. ft. of heating surface to each boiler.''

''We also guarantee to run these boilers 30 per cent. over the builders' rating and give you a clean stack with seven-tenths of an inch (.7 in.) draft.''

''The terms of payment shall be 50 per cent. when machines are delivered and erected and the balance when machines are completed, tested and accepted, considering that 30 days after completion to be a satisfactory time for the acceptance of the above machines.''

It is admitted by both parties that the rated horse power of each boiler was 240 and not 250, as stated in the contract. The work of installing the boilers and stokers proceeded at the same time and was completed about January 15, 1903. No fire was ever built upon the larger stoker. Defendant's engineer built by hand a fire upon the grates of the smaller stoker before January 20, and found that the boiler worked badly and so reported to the defendant. McKenzie, the president of the plaintiff company, reported to defendant that he was ready for a test and the tests were made January 20 by operating the smaller stoker for six hours. Thirty per cent. increase of 240 rated horse power would be 312. The horse power developed during the first four hours of the test, as shown by the water evaporated was 313.14, during the last two hours 227, and the average horse power developed during the six hours test was 304. McKenzie contended that the stoker worked satisfactorily, but that there was something the matter with the boiler; that this trouble was due to the shape and arrangement of what is known as the ''baffling tile'' or ''baffling'' which is a part of the fitting of the boiler and has nothing to do with the stoker.

January 26, 1903, defendant wrote plaintiff to remove said stoker at once. McKenzie then called on defendant, told him that the trouble was with the baffling and offered, for the plaintiff, to change and ad-

just the baffling at plaintiff's expense, and get the boilers to working right. To this defendant assented. The same day, however, defendant wrote plaintiff as follows:

"CHICAGO, ILL., January 29, 1903.

McKENZIE FURNACE Co.,
    City.

GENTLEMEN: After considering our conversation this afternoon, and going over the situation and conditions of my boiler plant, I would state that I cannot do otherwise than ask you to remove the furnaces, as per my letter of January 27th, 1903."

Soon after this letter was written, the defendant took out the stokers and stored them, subject to plaintiff's order. Plaintiff refused to take the stokers back and brought this suit to recover the contract price.

The second additional count of the declaration sets out the facts as to the contract and the furnishing of the stokers and avers: that at the time the test of the said stokers was made, the building and adjustment of said boilers had not been perfected and the said boilers were not properly adjusted and in proper order and were not able to develop and maintain their rated horse power; that although plaintiff did not erect and install and was not responsible for said boilers, it did, at the time the test of the said stokers was made, and thereafter, offer to examine the boilers and ascertain if possible the trouble and fault and the cause for the failure of said boilers to operate satisfactorily, and plaintiff offered to make any adjustments or modifications in said boilers if any adjustments or modifications were necessary, that said boilers might operate properly, and the rated horse power might be obtained and maintained without the aid of said stokers, and in order that the horse power of said boilers might be increased 30 per cent. with the aid of said stokers over the rating of said boilers; that defendant would not allow the plaintiff to adjust

or modify said boilers in any way and did not adjust or modify same himself, and did not give said stokers a reasonable and fair test, and did not allow said defendant to make a reasonable and fair test of said stokers under fair and reasonable conditions; that defendant did not make or allow any test of the larger stoker, but caused said stoker to be removed and placed elsewhere; that said boilers would have operated satisfactorily and, with the aid of said stokers, maintain 30 per cent. over their said rated horse power, and said stokers would have been found satisfactory in every respect had the necessary modification and adjustment of said boilers been made.

The defendant pleaded *non assumpsit* and gave notice that at the trial he would show failure of performance of the contract.

CHARLES B. STAFFORD, for appellant.

JOB & TAYLOR, for appellee; DUDLEY TAYLOR, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

The decision in this case turns mainly upon the construction to be given to the contract. As to the circumstances surrounding the parties and the objects they had in view in entering into the contract, there is no controversy. The stoker in question is a device intended to control and regulate the burning of coal in the furnace under a boiler. It consists of a series of transverse grate bars, each fastened at each end to an endless chain which carries the bars from the front end of the furnace to the rear end, then down over a wheel, back to the front end and up over another wheel, to pass again over the same circuit. The coal is put on the bars of the stoker at the front end of the furnace and is intended to be all burned when it reaches the rear end. In all water tube boilers baf-

fling tiles are used to direct the course of the heat currents, technically called gases. These gases travel from the front end of the boiler to the back end and *vice versa*. There are at least two kinds of baffling tiles, known as "C" and "D" tiles, taking their names from the shapes of the two letters. These tiles are movable, not fastened to any part of the boiler, and to take out a row or even to take out all the tiles and put other tiles in their place is the work of but a few minutes. The baffling tiles are put in after the boiler is put in place. The amount and arrangement of the baffling tiles required in a boiler to produce the best results depend upon the draft and other local conditions. If the openings in the baffling are too many or too large the efficiency of the boiler is decreased. If the openings are too few or too small, the efficiency of the boiler is also decreased. The "D" tile is the older and more generally used kind of tile and was the kind of tile the boiler company originally intended to put in the boilers in question. While the boilers were being constructed a change of tile was decided upon and the "C" tile was put in instead of the "D" as first intended.

The contention of the defendant is that the plaintiff knew when the test was made the kind, amount and arrangement of the baffling in the boiler; that the plaintiff, to fulfill its guaranty of efficiency, was bound to develop, upon that test, 312 horse power in the boiler in the condition the boiler was at the time of the test; that defendant had the right to buy boilers with the kind and quality of baffling in them that was in the boilers in question, arranged as the baffling was then arranged in those boilers; that he did not agree to change the baffling; was under no obligation to the plaintiff to permit plaintiff to change the baffling, and when upon the test the guaranteed horse power was not developed, he had the right, which he exercised, to reject the stokers.

If the contract be given the construction thus con-

tended for, the defendant would be entitled to a peremptory instruction to the jury to find the issues for him. But with the contention of appellant we cannot agree. If the kind, amount and arrangement of the baffling was the same in each Erie City water tube boiler of the same rated horse power, then the parties by specifying and agreeing upon an Erie City boiler, would be held to specify and agree upon the baffling in such boiler. But the evidence clearly shows that the baffling is not the same in each Erie City boiler; that there are in use at least two kinds of baffling; that the kind, amount and arrangement of the baffling in each boiler depends upon the draft and other local conditions and must necessarily be determined by actual trial. In this case the defendant, a few days after he took out the stokers, while firing by hand took out one row or section of tiling and the boiler worked better; later he took out the "C" tile and put in "D" and took out another row or section of tiling and the boiler worked still better, but it was not until all such changes in the baffling had been made and the water in the boiler lowered that the boiler worked satisfactorily.

We do not hold that the defendant under this contract was bound to furnish a boiler that when fired without the stoker would develop its rated 240 horse power. We do hold that the defendant under the contract was bound to furnish the boiler specified in the contract in such condition and with such kind, amount and arrangement of the baffling in it, that when fired without the stoker, it would work normally; work in the manner and with the efficiency that such boiler usually works when so fired.

The contract does not provide that the efficiency of the stoker shall be decided and determined by a single test, but provides that the final payment shall be made when the machines are: "Completed, tested and accepted, considering that 30 days after completion to be a satisfactory time for the acceptance of the above

machines.'' The failure of one· of the two stokers on a test made within five days after its completion to develop the guaranteed horse power did not, in our opinion, give the defendant the right to reject the stokers. Defendant refused to permit plaintiff to make any change in the baffling, and prevented any further action on the part of the plaintiff.

''A party who prevents a thing being done within the time stipulated will not be allowed to avail himself of the non-performance he himself occasioned and then avoid the agreement.'' Lehman v. Webster, 209 Ill. 264, 268.

Giving to the contract in question the construction we think must, under the facts and circumstances shown by the evidence, be given to. it, it was, in our opinion, a question for the jury whether the defendant gave the plaintiff a fair and reasonable opportunity to test the efficiency of the stoker. Upon that construction of the contract the court did not, in our opinion, err in its rulings upon evidence or upon instructions. Indeed, the objection urged to the rulings upon evidence and instructions are based upon a different construction of the contract from that we think must be given it.

The judgment of the Circuit Court will be affirmed.

*Affirmed.*

Judgment affirmed, 231 Ill. 561.